United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HONG JUN XUN,

      Plaintiff,

      v.

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

      Defendant.

Case No.: C-13-2041-YGR

ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff Hong Jun Xun brings this action against the Acting Commissioner of Social Security seeking judicial review of the Social Security Administration ("SSA") administrative law judge's ("ALJ") adverse decision against him. The ALJ determined that plaintiff had been overpaid need-based supplemental security income ("SSI") benefits from April 2006 to June 2008, largely due to (1) $47,000 that plaintiff held in an individually titled bank account but says he only held in trust for a brother in China and (2) plaintiff's extensive travels in Eastern Europe and Asia during that period, which travels plaintiff acknowledges. The ALJ further determined that plaintiff was not entitled to waiver of the overpayment because he was "not without fault." The question before the Court is whether the ALJ's determinations were free of reversible legal error and supported by substantial evidence.

The administrative record ("Record") has been lodged with the Court and the parties have filed cross-motions for summary judgment (Dkt. Nos. 14 ("Pl. MSJ"), 23 ("Def. XMSJ"), 25 ("Pl. Response")). The parties also have filed separate statements of material fact (Dkt. Nos. 15 ("Pl. Stmt."), 24 ("Def. Stmt.")). Having fully considered the Record, the arguments of the parties, and

United States District Court
Northern District of California

applicable authorities, for the reasons set forth below the Court **AFFIRMS** the ALJ's decision but for his determination that plaintiff was not entitled to waiver of the overpayment.  The Court finds that the ALJ failed to develop an evidentiary record sufficient to support that determination and, thus, **REVERSES AND REMANDS** for further factual development with respect to that issue.  Accordingly, the Court **GRANTS** both motions in part and **DENIES** both in part.

## II.     BACKGROUND

The facts related below are undisputed unless otherwise noted.

### A.     PLAINTIFF'S RECEIPT OF FUNDS AND INTERNATIONAL TRAVEL

In 1993, the SSA deemed plaintiff disabled due to anxiety and mood disorders and plaintiff began receiving SSI benefits.  Plaintiff's native language is Mandarin, and, at the time he began receiving SSI, he was not proficient in English.

Plaintiff asserts, and defendant disputes, that in April 2006 plaintiff's brother and sister-in-law, who reside in China, authorized him to open a bank account to hold $47,000 of their money in trust.  Plaintiff claims that he received that money sometime in 2006 via wire transfer, though the record contains no evidence of such transfer other than non-contemporaneous statements by plaintiff and his family members and the record does not divulge the date on which such transfer allegedly occurred.[1]  (Record at 155, 186, 188, 226, 470-73.)

From May 2006 to October 2006, plaintiff traveled widely outside the United States.  Plaintiff has been unable to produce documentation showing the specific countries in which he traveled or the specific days of travel, but he does not dispute that his bank records show that he withdrew money in the following cities in the months noted: Budapest, Hungary—May and June

---

[1] Plaintiff's motion for summary judgment represents that plaintiff's brother "transferred the funds to him in February of 2006," but the statement is not supported by record evidence.  Plaintiff cites to his separate statement of material fact, but the cited fact does not mention February 2006.  (*See* Pl. MSJ at 2-3 (citing Dkt. No. 15, Fact 1).)  Neither do the record citations on which plaintiff's separate statement relies.  (*See* Record at 155, 186, 188, 226, 470-73.)  The ALJ originally identified February 2006 as the date of the transfer but apparently abandoned that finding after further development of the record.  (*Compare id.* at 210 (ALJ's first decision, stating plaintiff received the money and deposited it in February 2006) *with id.* at 20 (ALJ's second decision, stating that the facts "as they stand now" indicated that brother "possibly sent money in early 2006, maybe April").)

United States District Court
Northern District of California

2006; Kiev, Ukraine—July 2006; Vilnius, Lithuania—July, August, September, and October 2006;

Riga, Latvia—October 2006; Prague, Czech Republic—October 2006; and Budapest, Hungary—

October 2006.  (*See* Record at 28, 34-48.)

On December 20, 2006, plaintiff deposited $47,000 into an account at California Savings

Bank in San Francisco, whose number ends in the digits 312 (the "312 Account").  (Record at 51.)

By the next day, he had withdrawn the same amount.  (*See id.* (record of daily balances).)

Bank statements from the '312 Account show that, in February 2007, plaintiff visited

Thailand and China.  (Record at 57-60.)  In March through October 2007, he withdrew money from

banks in Budapest, Krakow, Vilnius, Warsaw, Berlin, and, again, Budapest.  (Record at 57-80.)

**B.    TERMINATION OF BENEFITS AND DETERMINATION OF OVERPAYMENT**

In February 2008, the SSA obtained IRS records showing that, in the tax year 2006, plaintiff

earned interest from three bank accounts, two at California Savings Bank (now Pacific National

Bank; "California Savings" herein), home of the '312 Account, and one at Sterling Bank & Trust

FSB ("Sterling Bank").  The two California Savings Bank accounts earned interest in the amounts

of $1,228 and $50, and the Sterling Bank account earned $1,782.[2]  (Record at 23.)

On February 11, 2008, the SSA sent plaintiff a letter requesting that he appear at an

appointment on February 21, 2008.  (Record at 22.)  The letter specifically requested bank

statements from California Savings and Sterling dating back to August 2005.  (*Id.*)  On February

28, 2008, plaintiff submitted records.  (*Id.* at 95 (letter), 24-91 (records from California Savings),

92-94 (records from Sterling Bank).)  The records from Sterling Bank showed an account that

opened on March 10, 2006 with a deposit of $500.00 and closed March 28, 2006 with a balance of

$500.64.  However, as of March 2008, plaintiff also held a Certificate of Deposit at Sterling Bank,

in his name alone, with a balance of $48,260.36 and a maturity date of December 2008 ("Sterling

CD").  (*Id.* at 154.)

On April 30, 2008, the SSA sent plaintiff a letter requesting that plaintiff appear for an

appointment on May 7, 2008, with his bank statements and other financial information from August

---

[2] The IRS records do not specify account numbers and hence do not clarify which, if either, of the two California Savings accounts that earned interest in 2006 was the '312 Account.

1, 2005 to the present.  (Record at 97-98.)  Plaintiff did not appear.  (*See id.* at 102.)  An undated document in the record, apparently written and signed by plaintiff, states that he called SSA to say he could not appear because of "[an]other engagement" but that he did not "have the documents [SSA] requested" because he did not have "saving[s], pay stub, tax return, pension, life insurance, workers compensation, reward letter, etc."  (*Id.* at 104.)

On May 14, 2008, the SSA sent a second request to the same effect and stating that his SSI would be terminated if he did not respond within 30 days.  (Record at 99-100.)  On May 27, plaintiff responded by letter, stating that he had not received SSA's May 14 letter until May 24 and in any event did "not have those financial asse[]ts and accounts in the first place."  (*Id.* at 103.)

On May 28, 2008, SSA sent plaintiff a Notice of Planned Action letter stating, inter alia, that SSA was stopping payment of plaintiff's benefit as of July 2008 because the SSA had determined that he had "resources worth more than $2,000.00 for February 2006 on."  (Record at 105-140.)

On June 9, 2008, plaintiff filed a request for reconsideration, apparently pertaining to the May 28 Notice of Planned Action to terminate his benefits.  (Record at 156-57.)

On June 20, 2008, plaintiff closed the Sterling CD, which had a balance of  $48,260.36. The same day, he wrote a check for $46,267.98 to his sister.  (Record at 170-72.)  She deposited that amount into a Wells Fargo Bank account.  The parties agree that plaintiff retained the approximately $2,000 difference, ostensibly as a loan from his brother for living expenses.

On June 23, 2008, the SSA sent plaintiff a Notice of Overpayment, stating that it had overpaid him $24,640 in SSI benefits from February 2006 to June 2008.  (Record at 141-49.)

On July 17, 2008, plaintiff filed a request for reconsideration, apparently pertaining to the Notice of Overpayment.  (Record at 158-59.)

On December 3, 2008, in response to plaintiff's July 17 request for reconsideration of the overpayment determination, the SSA affirmed its initial determination to terminate benefits. (Record at 174-176.)   On December 8, 2008, plaintiff timely filed a request for a hearing before ALJ.  (Record at 180-82.)

On December 12, 2008, in response to plaintiff's June 9 request for reconsideration of the decision to terminate his benefits, the SSA affirmed its initial determination.  (Record at 177-179.)

On December 30, 2008, now with the assistance of counsel, plaintiff requested a hearing before an ALJ to challenge the revocation of his benefits.  (Record at 183-193 (request for hearing); 194  (appointment of counsel).)

### C.   PROCEEDINGS BEFORE THE ALJ AND THE APPEALS COUNCIL

On June 15, 2009, the ALJ held a hearing concerning both the termination of plaintiff's benefits and the overpayment determination.  (Record at 195-98 (notice of hearing pertaining to revocation); 199-201 (notice of hearing pertaining to overpayment).)  It was at the June 15, 2009 hearing that the matter of plaintiff's international travel first arose, after the ALJ inquired about it. (*See* Record at 211; 451-53; 475-77.)

On October 7, 2009, the ALJ issued his first decision in this case.  (Record at 206-212.) The ALJ found that (1) plaintiff was ineligible for and overpaid SSI from February 2006 through June 2008 "because of excess resources in the form of cash in a bank account held in his name as sole owner"; (2) plaintiff, by giving the money to his sister following receipt of SSA's Notice of Planned Decision to terminate his benefits, transferred the funds for less than fair market value, in violation of 20 C.F.R. § 416.1246;[3] (3) plaintiff was "not without fault with respect to the overpayment"; and (4) plaintiff was not entitled to a waiver of the overpayment.  (*Id.* at 212.)

Plaintiff appealed to the Appeals Council.  (Record at 215-31.)  Included among the documents sent to the Appeals Council was a document styled as a declaration, dated November 17, 2009, and characterized by plaintiff as the statement of his brother and sister-in-law in China, translated from Mandarin to English and notarized by a Chinese notary.  (*Id.* at 226 (declaration); 485-87 (plaintiff's June 15, 2009 hearing testimony concerning provenance of declaration).)

---

[3] "An individual (or eligible spouse) who gives away or sells a nonexcluded resource for less than fair market value for the purpose of establishing SSI or Medicaid eligibility will be charged with the difference between the fair market value of the resource and the amount of compensation received."  20 C.F.R. § 416.1246(a)(1).  The SSA's Program Operations Manual System provides a period of ineligibility for benefits lasting up to 36 months from the first day of the first month starting after the transfer.  SSA POMS SI 01150.110.  Here, the ALJ accepted the SSA's calculation of a 36-month ineligibility period (Record at 210), and plaintiff has not disputed it (*see generally* Pl. MSJ, Pl. Response).

United States District Court
Northern District of California

United States District Court
Northern District of California

On February 10, 2011, the Appeals Council vacated the ALJ's decision of October 7, 2009, and remanded the case for further consideration.  (Record at 233-39.)  The Appeals Council found that the ALJ had failed to address whether plaintiff had the legal right to withdraw the funds in his accounts and use them for his support and maintenance.  (*Id.* at 236.)  The Appeals Council expressly noted plaintiff's argument that he held the money in a resulting trust created by California law and directed the ALJ to develop the evidence pertaining to that issue further on remand.  (*Id.* at 237.)  The Appeals Council also directed the ALJ to revisit his refusal to waive repayment in light of plaintiff's limited English proficiency and disability due to mental impairment.  (*Id.* at 238.)

On October 19, 2011, in remand proceedings, the ALJ conducted a second hearing. (Record at 422-456.)  On December 16, 2011, the ALJ issued the decision challenged here.  (*Id.* at 12-21.)  The Court will detail that decision as necessary in the discussion below, but, as a general matter, the ALJ determined that: (1) plaintiff had been overpaid benefits in an amount to be determined from April 1, 2006 to June 1, 2008 because (a) the record demonstrated he had the right to use the $47,000 during that time and hence he had excess resources, (b) he was ineligible for the payments made during his travels from May 2006 through October 2007, (c) the records he provided showed assets in excess of $2,000 in several months, and (d) plaintiff failed to provide records for two of his bank accounts and hence proffered no evidence that those accounts "also did not amount to resources over $2,000"; (2) plaintiff disposed of his excess resources for less than fair market value by transferring the funds in the Sterling CD to his sister and, as a result, was subject to disqualification for SSI benefits for a 36-month period that ended June 20, 2011; and (3) plaintiff was at fault for causing the overpayment because he should have known that he was required to report the funds in his accounts and his international travel, but did not.  On the basis of these findings of fact and conclusions of law, the ALJ held that plaintiff was liable for repayment of benefits issued to him April 1, 2006 through June 1, 2008.  (*Id.* at 21.)  The ALJ estimated the amount of overpayment at $22,980 but committed the final calculation to SSA.  (*Id.*)

On March 7, 2013, the Appeals Council summarily denied plaintiff's appeal of the ALJ's final decision.  (Record at 4-7.)  Plaintiff timely filed the instant action with this Court, seeking judicial review under 42 U.S.C. § 405(g).

United States District Court
Northern District of California

### III.   STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).  The decision of the Commissioner should "only be disturbed if it is not supported by substantial evidence or it is based on legal error."  *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted).  It is evidence that a reasonable mind would accept as adequate to support the conclusion.  *Id.*  A reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted).

Credibility assessments are often necessary in hearings before an ALJ.  *Hudson v. Bowen,* 849 F.2d 433, 434 (9th Cir. 1988).  "[I]n determining whether a claimant has spent or retained excess resources, an ALJ must be free to disregard self-serving statements that cannot be verified . . . ."  *Id.* (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)).  Where a credibility determination is a "critical factor" in the ALJ's decision, the ALJ must make an "explicit credibility finding" that is "supported by a specific, cogent reason for the disbelief."  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Assuming the finding is so supported, it must be given great weight.  *Id.*; *Hudson,* 849 F.2d at 434.

### IV.   DISCUSSION

Because SSI is a needs-based benefit, it is only available for "aged, blind, or disabled" individuals who meet strict income and resource limits.  *See* 42 U.S.C. § 1381a.  To be eligible for SSI, an individual, like plaintiff here, who does not have an eligible spouse is limited to $2,000 in resources.  *See* 42 U.S.C. § 1382(a)(3)(B); 20 C.F.R. § 416.1205(c).  The term "resources" is not defined in the statute, but the SSA has promulgated a definition by regulation.  Resources include

United States District Court
Northern District of California

"cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his or her support and maintenance."  20 C.F.R. § 416.1201(a).

Money in a financial account is considered a claimant's resources if (i) the claimant owns the account and (ii) can use the funds for his or her support and maintenance.  20 C.F.R. § 416.1208(a).  Ownership of the account is determined by looking at how the individual holds the account, that is, how the account is titled.  *Id.*  An SSI claimant is presumed to own all the funds in an account to which he or she holds title.  In cases where the claimant holds title to the account jointly, the claimant may offer evidence to rebut the presumption of ownership.  *Id.* § 416.1208(c).  But when the claimant holds title to the account individually, as here, the presumption of ownership is irrebuttable.  *Id.* § 416.1208(b).

Here, plaintiff acknowledges that he individually held title to the accounts in which resided the $47,000 he ostensibly held for his brother.  In the challenged decision, the ALJ applied the irrebuttable presumption of section 416.1208(b) and determined that plaintiff owned the subject funds.  (Record at 18-19.)  The ALJ also determined that the record lacked adequate evidence that the plaintiff lacked the right to use the funds for his own support and maintenance.  (*Id.* at 18.)  The ALJ cited plaintiff's ability to "move[] the money from time to time into different accounts, apparently without needing to seek permission from anyone to do so," his unilateral closure of an account containing the funds, his transfer of the funds to his sister, and his retention of $2,000 of those transferred funds for his own use, ostensibly as a loan "but without requiring a second signature or other indicator that the money was not his to control."  (*Id.* at 18-19.)  On these grounds, the ALJ determined that the funds in the account were plaintiff's resources.  The ALJ rejected plaintiff's contentions that (1) plaintiff held the funds in a "resulting trust" created by operation of California state law and (2) Section 1613(e) of the Social Security Act (codified at 42 U.S.C. § 1382b) operated to exclude the purported trust from plaintiff's countable resources because the trust was irrevocable.  (*Id.* at 19.)  The ALJ reasoned that plaintiff's ability to transfer the funds at will and close the accounts holding them without seeking authorization demonstrated that there was no trust or, if there was, it was not irrevocable.  (*Id.*)

United States District Court
Northern District of California

Plaintiff urges reversal of three aspects of the ALJ's decision for four reasons.  Plaintiff contends, *first*, that the ALJ's determination of an overpayment is plainly erroneous because the regulation creating the irrebuttable presumption on which the ALJ relied, 20 C.F.R. § 416.1208(b), is unconstitutional.  *Second*, plaintiff contends that, even if 20 C.F.R. § 416.1208(b) were constitutional, the record before the ALJ did not contain substantial evidence supporting the ALJ's conclusion that the funds in the bank account titled to plaintiff belonged to him and could be used by him for his support and maintenance.  *Third*, plaintiff argues that the SSA erred in withholding payment of plaintiff's SSI benefit during the pendency of his appeal of the ALJ's first adverse benefits determination.  Defendant acknowledges the error but responds that ordering back payment now would merely result in additional overpayment and therefore is moot, as well as beyond the permissible scope of judicial review authorized by 42 U.S.C. § 405(g).  *Finally*, plaintiff argues that the ALJ erred in refusing to waive any overpayment, as permitted by statute and regulation.

The Court addresses each purported error in turn.  As set forth below, the Court affirms the ALJ's decision except with respect to the fourth challenge concerning waiver.  On that point, the Court finds the ALJ failed to develop an evidentiary record adequate to support his conclusion.

### A.   Constitutional Challenges to Section 416.1208(b)

Plaintiff argues that the ALJ erred in relying on the irrebuttable presumption of ownership created by 20 C.F.R. § 416.1208(b) (herein "Section 416.1208(b)").  Plaintiff contends that Section 416.1208(b) is unconstitutional because (1) it impermissibly interprets the statutory term "resources" and (2) its irrebuttable presumption violates due process.

#### 1.   Permissible Interpretation

When reviewing a federal agency's interpretation of a statute that it administers, this Court engages in a two-step inquiry.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Barnhart v. Walton*, 535 U.S. 212, 217-18 (2002).  The Court "must decide (1) whether the statute unambiguously forbids the Agency's interpretation, and, if not, (2) whether the interpretation, for other reasons, exceeds the bounds of the permissible."  *Hemp Indus. Ass'n. v. Drug Enforcement Admin.*, 357 F.3d 1012, 1015 (9th Cir. 2004) (quoting *Walton*, 535 U.S. at 218).  At step one, the Court "must give effect to the unambiguously expressed intent of Congress."

*Chevron*, 467 U.S. at 843.  "If, however, the statute 'is silent or ambiguous with respect to the specific issue,'" the Court must uphold the agency's interpretation "if it is 'based on a permissible construction'" of the statute.  *Walton*, 535 U.S. at 218 (quoting *Chevron*, 467 U.S. at 843).  Under *Chevron*, deference to an agency's interpretation is due when it is embodied in a rule duly promulgated pursuant to authority delegated to the agency by Congress.  *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001); *Astrue v. Capato ex rel. B.N.C.*, 132 S. Ct. 2021, 2033-34 (2012).  Under this deferential standard of review, the Court will "not disturb an agency rule unless it is arbitrary or capricious in substance, or manifestly contrary to the statute."  *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. ---, 131 S. Ct. 704, 711 (2011) (internal quotation marks omitted).  To restate the test in the affirmative, the Court will uphold a rule so long as it is rational and consistent with the statute.  *E.g.*, *Haro v. Sebelius*, --- F.3d ---, 2014 WL 21353, at *14 (9th Cir. Jan. 2, 2014).

Here, the relevant statute is 42 U.S.C. section 1382(a)(1)(B).  The specific issue at hand is whether that statute clearly conveys Congressional with respect to how "resources" are to be determined.  Section 1382 provides that, subject to income requirements not at issue here, "[e]ach aged, blind, or disabled" unmarried individual "whose resources" do not exceed $2,000 is eligible for SSI.  42 U.S.C. §§ 1382(a)(1)(B), 1382(a)(3)(B).  The statute does not define the term "resources" or specify a manner for determining which property, or, for that matter, whose property, the SSA may properly consider a claimant's "resources."  Thus, pursuant to the first step of the *Chevron* analysis, the Court determines that the statute is silent with respect to the specific issue raised in this case and proceeds to step two.[4]

---

[4] Plaintiff argues that the challenged regulation contradicts the statute's provision that "each" disabled individual is eligible for benefits, provided they meet the statute's income and resources requirements.  He admits that the statute does not define "resources" but argues that, no matter how it is defined, it is "clear that the resources considered must actually belong to the claimant."  (Pl. Response at 5 (citing 42 U.S.C. § 1382(a)(1)(B).)  The Court disagrees with that premise to the extent it suggests that, to be considered a claimant's "resource," an asset must "belong" to a claimant in the sense of being the claimant's personal property.  The statute does not speak "with the precision necessary to say definitively," *Mayo Found.*, 131 S. Ct. at 711, whether resources must "belong" to a claimant in that sense.  Indeed, contrary to plaintiff's view, SSA regulations have for decades permitted the practice of "deeming" certain assets belonging to a non-claimant

The next step requires the Court to determine whether the SSA's interpretation of the statue is rational and consistent with the statute.  The SSA promulgated Section 416.1208(b) pursuant to rulemaking authority granted by Congress and accordingly is due deference.  42 U.S.C. §§ 405(a), 902(a)(5); *Mead*, 533 U.S. at 226-27.  Nothing in the rule is manifestly contrary to the statute it interprets, nor is it arbitrary or capricious.  On the contrary, the SSA articulated a rational reason for the rule in its Notice of Final Rulemaking.  59 Fed. Reg. 27,985-1 (May 31, 1994).  The SSA explained that the irrebuttable presumption of Section 416.1208(b) existed because, in situations involving individually titled accounts, if the agency were to engage in individualized determinations,

> there would be no objective way for SSA to establish that funds in a solely-titled account did not belong to the titled owner.  To permit rebuttal of the ownership presumption with respect to a solely-titled account, SSA would have to rely on potentially self-serving allegations regarding ownership.  The possibility of program abuse under such a procedure would be unacceptably high.

*Id.* at 27, 987.  This rationale is consistent with the statutory requirement that the SSA refrain from determining benefits eligibility "solely on the basis of declarations by the applicant concerning eligibility factors or other relevant facts" and verify relevant information using "independent or collateral sources" so that "benefits are only provided to eligible individuals" and "the amounts of such benefits are correct."  42 U.S.C § 1383(e)(1)(B)(i).  Further, the rule self-evidently serves one of the two principal aims of the SSI program, namely, preventing dissipation of government resources "through neglect, abuse, or fraud."  *Jones v. Shalala*, 5 F.3d 447, 450 (9th Cir. 1993) (quoting *Lyon v. Bowen*, 802 F.2d 794, 797 (5th Cir. 1986)).  Finally, Section 416.1208(b) supplies the SSA with a clear and, importantly, an easily administrable rule.  *Cf. Weinberger v. Salfi*, 422 U.S. 749, 784 (1975) ("The administrative difficulties of individual eligibility determinations are without doubt matters which Congress may consider when determining whether to rely on rules which sweep more broadly than the evils with which they seek to deal.")

Plaintiff argues that Section 416.1208(b) frustrates the purposes of SSI by imputing to individuals resources which they do not own and have no legal right to use.  (Pl. Response at 6.)

---

(for instance, a non-eligible spouse) to be the resources of a claimant, regardless of whether the claimant may access them.  *See* 20 C.F.R. §§ 416.1202, 416.1160.

The Court notes, first, the circularity of this argument: Plaintiff contends, in essence, that Section 416.1208(b) is an invalid method for determining SSI eligibility because he is eligible but was denied eligibility under the rule.  That argument assumes what it seeks to prove, i.e., that Plaintiff is eligible under applicable law.  Second, while Plaintiff correctly notes Congress's remedial, humanitarian purpose for SSI, "[t]he goal of meeting the recipients' subsistence needs is tempered by a competing interest in preserving the fiscal solvency of the SSI program by protecting its coffers from dissipation through neglect, abuse and fraud."  *Martin v. Sullivan*, 976 F.2d 582, 584 (9th Cir. 1992) (internal quotation marks omitted).  "This combination of purposes animates the entire benefit scheme."  *Id.*  Plaintiff proffers too narrow a conception of Congress's intent in enacting SSI and, thus, supplies no reason to refrain from deferring to SSA's interpretation of the statute whose administration Congress entrusted to it.[5]

## 2.   Due Process

Plaintiff next contends that the irrebuttable presumption of ownership established by Section 416.1208(b) runs afoul of the due process protections of the Fifth Amendment of the United States Constitution.  (Pl. MSJ 14 at 8-9; Pl. Response at 2-5.)  Plaintiff relies on cases stating the general proposition that irrebuttable presumptions are disfavored under the Fifth and Fourteenth Amendments, but never articulates why the irrebuttable presumption at issue *here* is unconstitutional.  "[N]ot all so-called irrebuttable presumptions are unconstitutional."  *P.O.P.S. v. Gardner*, 998 F.2d 764, 767 (9th Cir. 1993) (citing *Michael H. v. Gerald D.*, 491 U.S. 110, 119 (1989); *Salfi*, 422 U.S. at 772).  Rather, the salient question with respect to irrebuttable presumptions is whether there exists an adequate "fit" between the classification created by the presumption and the policy that the classification serves.  *Michael H.*, 491 U.S. at 121.  "In cases involving due process and equal protection challenges to classifications created by the Social Security Act, . . . the inquiry is whether these classifications have some rational basis."  *Rundle v. Califano*, 639 F.2d 542, 544 (9th Cir. 1981); *see also Lipscomb By & Through DeFehr v. Simmons*, 962 F.2d 1374, 1381-82 (9th Cir. 1992) (same, in an equal protection case); *Burlington N. R. Co. v.*

---

[5] Also unavailing are Plaintiff's criticisms of the wisdom and efficiency of the SSA's chosen rule. (Pl. Response at 7-9.)  The relevant question under the deferential standard of review of *Chevron* and *Mead* is whether the SSA's interpretation of the statute is permissible, not whether it is optimal.

United States District Court
Northern District of California

*Dep't of Pub. Serv. Regulation*, 763 F.2d 1106, 1113 (9th Cir. 1985) (same, in the context of a due process and equal protection challenge to a state statute).  Importantly, the inquiry does *not* turn on considerations of procedural fairness.  That is, the absence of an opportunity to rebut the presumption does not, by itself, mean that the presumption is unconstitutional.  *See Michael H.*, 491 U.S. at 119-21.  The relevant inquiry is whether there is "some rational basis" for the presumption. *See Salfi*, 422 U.S. at 777.

Here, the Court concludes that Section 416.1208(b) does rest on a rational basis.  The rule inquires whether an individual is (1) "the sole owner by the account title," (2) "can withdraw funds and use them for his or her support and maintenance."  If the answer to both questions is affirmative, then the SSA treats "100 percent of the funds in the account" as owned by the account-holder.  This is a patently rational assumption.  Indeed, it would be unusual for a person *not* to own all the funds in her individually titled account.  Moreover, the assumption has obvious benefits for administrability and supports the SSA's mandate to make eligibility determinations without reference to self-serving or non-verifiable accounts from the person seeking benefits.  Were the agency required to accept at face value a claimant's representations as to whom the money in her individual bank account belonged, claimants could flout the Congressionally imposed resource requirement at will by arranging for third parties to transfer funds into the account and then representing that such transfers were made for reasons unrelated to the circumvention of resource requirements.[6]  It likely is true that an evidentiary hearing would, with great expenditure of resources, ferret out at least some of this chicanery and cut more finely than the categorical rule embodied in Section 416.1208(b).  But the only question before the Court is whether SSA's rule is rational, as opposed to ideally precise.  *Salfi*, 422 U.S. at 785; *Lipscomb*, 962 F.2d at 1381-82. Section 416.1208(b) survives rational-basis review.

---

[6] The same is true, of course, for the holders of jointly titled accounts, but there it is less likely that all the money in an account belongs solely to a single person account holder.  Rather, the form of title presumptively indicates joint ownership.  Section 416.1208(c)(3)'s provision to joint account holders of a right to rebut the presumption of ownership strikes a rational balance between the need for administrable standards on the one hand and the risk of program abuse on the other.  It does not, as plaintiff contends, demonstrate any arbitrariness in the provision of an irrebuttable presumption concerning individually titled accounts.

United States District Court
Northern District of California

1       Plaintiff's arguments to the contrary are unavailing.  Plaintiff contends that *Salfi* and its

2 progeny, which supply the framework for rational basis review of irrebuttable presumptions, are

3 inapposite because they apply only to *initial* eligibility determinations for *non*-need based benefits,

4 and that a higher standard of review applies for *termination* of *need*-based benefits.  (Pl. Response

5 at 2-3.)  Plaintiff relies principally on *Goldberg v. Kelly*, 397 U.S. 254 (1970).  That case, however,

6 considered only the question of whether due process required a hearing before termination of

7 welfare benefits or, instead, a prompt post-termination hearing.  The *Goldberg* Court held that due

8 process required a pre-termination hearing "at a meaningful time and in a meaningful manner."  *Id.*

9 at 263-64, 267.  It did not, as plaintiff suggests, announce a standard for judicial review of agency

10 rulemaking.  Plaintiff acknowledges that he received a hearing prior to the ALJ's finding of an

11 overpayment, but contends that the hearing was not meaningful because the irrebuttable

12 presumption of Section 416.1208(b) made "the termination of his SSI benefits . . . a foregone

13 conclusion solely because of the way the account was titled."  (Pl. Response at 5.)  The Court

14 rejects this argument because it conflates the notion of a "meaningful" hearing with the provision of

15 an opportunity to rebut the regulation's irrebuttable presumption.  That position is foreclosed by

16 *Salfi*, which, as the Court explained above, makes plain that the validity of an irrebuttable

17 presumption does not hinge on the availability of an opportunity to rebut the presumption, but

18 rather the fit between classification and policy.

19       Plaintiff also argues that Section 416.1208(b) must be struck down because the private

20 interest at stake is important and the government could provide an individualized hearing "without

21 much difficulty."  (Pl. Response at 4-5.)  Even accepting arguendo Plaintiff's premise that providing

22 evidentiary hearings in circumstances like his could be provided with ease, the argument supplies

23 no basis for striking down the rule.  The SSA was permitted to determine that "limited resources

24 would not be well spent in making individual determinations."  *Regents of Univ. of California v.*

25 *Shalala*, 82 F.3d 291, 297 (9th Cir. 1996) (quoting *Salfi*, 422 U.S. at 784).  That the SSA has done

26 so here does not make Section 416.1208(b) irrational or contrary to due process.

27       For the reasons set forth above, the Court rejects plaintiff's challenges to the

28 constitutionality of Section 416.1208(b).

**B.     CHALLENGES TO ALJ'S APPLICATION OF REGULATION TO EVIDENCE**

Plaintiff contends that, even if Section 416.1208(b) is constitutional, the ALJ's determination of overpayment must be reversed because it was not supported by substantial evidence.[7]  "Substantial evidence is relevant evidence that a reasonable mind *might* accept as adequate to support a conclusion."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis supplied).  It is "more than a mere scintilla but less than a preponderance."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (internal quotation marks omitted).  In determining whether an ALJ's decision was supported by substantial evidence, the Court must consider the entire record, weighing both the evidence that supports and that contradicts the ALJ's conclusion.  *Id.*  Where the evidence, considered holistically, "is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  A court reviews "only the reasons provided by the ALJ . . . and may not affirm the ALJ on a ground upon which he did not rely."  *Id.; see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court erred in affirming an ALJ's credibility determination on the basis of "evidence that the ALJ did not discuss").

The ALJ determined that plaintiff was overpaid benefits during the period April 1, 2006, to June 1, 2008, due to excess resources, including but not limited to the funds plaintiff claims he held in trust for his brother.  (Record at 15-19.)  Plaintiff contends that the ALJ's determination that he possessed excess resources fails substantial-evidence review because: (1) the ALJ wrongly discounted evidence establishing that plaintiff held the subject funds in a resulting trust created by operation of California law, and (2) evidence proffered by plaintiff conclusively established that he could not use the subject funds for his own support and maintenance.  Because plaintiff's second argument hinges on the premise that plaintiff held the subject funds in trust, his two arguments collapse into a single inquiry: whether substantial evidence supported the ALJ's determination that no trust existed.  The Court answers that question in the affirmative.

---

[7] Plaintiff also reprises his arguments concerning Section 416.1208(b)'s validity by reframing them in terms of the ALJ's interpretation of the statute.  (Pl. Response at 9.)  The Court has already rejected those arguments.

United States District Court
Northern District of California

1      Under California law, "[a] resulting trust arises by operation of law from a transfer of

2   property under circumstances showing that the transferee was not intended to take the beneficial

3   interest." *Lloyds Bank California v. Wells Fargo Bank*, 187 Cal. App. 3d 1038, 1042 (Cal. Ct. App.

4   1986) (citing Restatement (Second) of Trusts § 404 (1959)). "Such a resulting trust carries out and

5   enforces the inferred intent of the parties." *Id.* "Ordinarily a resulting trust arises in favor of the

6   payor of the purchase price of the property where the purchase price, or a part thereof, is paid by

7   one person and the title is taken in the name of another." *Id.* (internal quotation marks omitted).

8   "The trust arises because it is the natural presumption in such a case that it was their intention that

9   the ostensible purchaser should acquire and hold the property for the one with whose means it was

10  acquired." *Id.* (internal quotation marks omitted).

11      As a threshold matter, the parties dispute whether the ALJ was required to apply

12  California's law of trusts to determine whether plaintiff legally could use the subject funds.

13  Plaintiff states that the ALJ was required to apply state law both because it was needed to determine

14  whether any legal restrictions on Plaintiff's right to use the funds existed and because the Appeals

15  Council, in remanding the case to the ALJ for the second decision, specifically instructed him to

16  conduct a state-law analysis. Defendant responds that the ALJ not only was not required to apply

17  state law, but was not *permitted* to do so because Section 416.1208(b) is intended to supply a

18  uniform national standard. Defendant explains that the Appeals Council's apparent instruction to

19  the ALJ to inquire into the application of California trust law was erroneous. (Def. XMSJ at 19

20  n.8.) Plaintiff urges the Court to hold defendant bound by the Appeals Council's instruction.

21      The Court need not resolve this dispute because the result here is the same whether or not

22  California trust law applies. If the ALJ was not required to apply California trust law, then he

23  properly applied Section 416.1208(b) without reference to any claim that plaintiff held the funds in

24  trust. If, however, the ALJ *was* required to apply California trust law, his determination that no

25  trust arose was supported by "relevant evidence that a reasonable mind might accept as adequate to

26  support [his] conclusion." *Webb*, 433 F.3d at 686.

27      In determining whether a resulting trust is created under California law, the ultimate issue is

28  whether the circumstances show that the parties to a transfer of interest in property did not intend

16

for the recipient to hold the beneficial interest despite holding the legal interest, that is, title.  *See Lloyds Bank*, 187 Cal. App. 3d at 1042.  Here, the ALJ rationally found that the record before him contained no reliable indicia of such intent.  The material portion of the record contained three statements submitted by plaintiff's brother indicating that, in early 2006, he gave plaintiff $47,000 to hold for him.  (Record at 155 (first statement), 186 (second statement), 226 (third statement).)[8] The three statements were dated June 20, 2008; December 21, 2008; and November 27, 2009, respectively.  On the basis of this record, the ALJ made the factual finding that plaintiff's brother and sister-in-law had made non-contemporaneous statements that they "authorized the [plaintiff] to open an account in his own name in April 2006 and that their money in the amount of $47,000 was deposited into that account (although no date of deposit was given)."  (Record at 17.)  The ALJ emphasized that plaintiff's relatives, while they had stated that plaintiff held their money in custody, "did not declare that they gave him instructions that he could not use the money for any purpose and they did not use the word 'trust.'"  (*Id.*)  He noted the absence of independent evidence "such as a copy of a wire transfer, bank check, cashier's check, money order, personal check, or deposit of cash," that would corroborate plaintiff's relatives' assertions as to the origin of the funds.  (*Id.*)  He noted that there was a "change" from the first two declarations to the third, in that only the last identified the sister-in-law as having any interest in the funds.  And, finally, he found that "none of these statements are contemporaneous with the date of the alleged transfer of money; they are opportunistic and were issued only when the [plaintiff] became aware of the intention of the [SSA] to cease his benefits."  (*Id.*)  Evidently on the basis of these findings, the ALJ rendered the legal conclusion that there was "no contemporaneous evidence of a trust and [that] the statements from [plaintiff's] brother and sister-in-law do not indicate they intended to set up a trust."  (*Id.* at 19.)

The Court finds the ALJ's conclusion to be supported by substantial evidence.  The record shows that none the evidence proffered by plaintiff to demonstrate intent to create a trust was

---

[8] The third statement purports to be a joint statement from plaintiff's brother and sister-in-law, and indicates that the two of them jointly authorized plaintiff to open an account and deposit $47,000 belonging to them jointly in the account.  The third statement is more specific than the earlier two in that it alone identifies April 2006, as opposed to "early 2006," as the period during which plaintiff was authorized to open a bank account.

United States District Court
Northern District of California

contemporaneous or reliable.  The only direct indications of the purported settlors' intent are post hoc, unsworn statements by third parties beyond the reach of the jurisdiction of the United States. Even treating those statements as credible and reading them in the light most favorable to plaintiff, plaintiff received $47,000 from his brother and sister-in-law by wire transfer in or around April 2006 and then deposited the funds into one of his three banking accounts in December 2006, for a single day.  As the ALJ observed, no evidence connects the $47,000 received early in 2006 with the $47,000 deposited in December 2006, though the record reflects, and plaintiff admits, that he traveled internationally during this period, purportedly using only his SSI money.[9]  No receipts or other evidence before the ALJ corroborated that statement, though the record did show that plaintiff had left on his travels almost immediately after receiving the funds from his brother; that plaintiff did not inform SSA of his travels; and that plaintiff never informed SSA of the funds he purportedly held for his brother.  The record before the ALJ contained no statements from two of the three bank accounts plaintiff held during this time, though the SSA requested them.  When plaintiff received notice that his SSI benefits were about to be terminated, he closed the Sterling CD without any apparent prior authorization from the purported trustor, and gave the money to his sister, again without any apparent prior authorization.

With these facts before him, the ALJ found that the circumstances of the transfer did not indicate intent to create a resulting trust.  The Court agrees.  The circumstances give rise to no "natural presumption" that plaintiff's brother and/or sister-in-law intended plaintiff to hold the money.  *Lloyds Bank*, 187 Cal. App. 3d at 1042.  Rather, it is plaintiff's interpretation of the evidence that is strained.  Granting that plaintiff's interpretation is conceivable, an ALJ's decision "should be upheld" where the evidence before him was "susceptible to more than one rational interpretation." *Ryan,* 528 F.3d at 1198.  The Court finds that the ALJ's determination that no trust arose under California law was supported by substantial evidence and rational inferences therefrom.

---

[9] Plaintiff asserts that his admission of foreign travel rendered those travels "irrelevant" to the ALJ's, and this Court's, analysis.  Not so.  The travels provide an obvious explanation for how plaintiff might have spent the funds transferred to him in early 2006, before placing them for one day in his Sterling account.

United States District Court
Northern District of California

1    Because the Court affirms the ALJ's determination that no trust arose, the Court need not reach

2    plaintiff's argument that the trust was irrevocable.

3        For the foregoing reasons, the Court **AFFIRMS** the ALJ's determination that the SSI benefits

4    plaintiff received from April 1, 2006 to June 1, 2008 were overpayments.

5        **C.    WITHHOLDING OF BENEFITS DURING PENDENCY OF ADMINISTRATIVE APPEAL**

6        If an SSI recipient receives from the SSA a notice of intent to terminate payments, and the

7    recipient files an appeal within 10 days of receiving the notice, "the payment shall be continued or

8    reinstated at the previously established payment level . . . until a decision on such initial appeal is

9    issued, unless" the recipient waives the continued payments.  20 C.F.R. § 416.1336(b).  Here,

10   defendant admits that plaintiff timely appealed the SSA's initial decision to terminate his benefits as

11   of June 2008 and that he therefore should have been paid continuing benefits from July 2008 to at

12   least December 12, 2008, but that he never received those payments.  Defendant argues that the

13   issue is moot, however, because any payment of mistakenly unpaid benefits now would only add to

14   the amount of overpayment already received by plaintiff.  (Def. XMSJ at 21-22.)  Plaintiff does not

15   address the mootness argument and instead strenuously requests an order directing the SSA

16   immediately to pay the waylaid amounts, and, further, insists that defendant be bound by statements

17   made by the ALJ and Appeals Council to the effect that plaintiff should have received payments

18   lasting through the ALJ rendered his initial decision in October 2009.  (Pl. MSJ at 13; Pl. Response

19   at 15-16.)

20       The Court agrees with defendant that the matter of the missed payments is mooted by the

21   Court's affirmation of the ALJ's overpayment determination.  Any order now requiring immediate

22   payment of the missed continuation benefits, when plaintiff has already been overpaid, would

23   simply add an additional overpayment, assuming the Court has jurisdiction to make such an order

24   in the first place.[10]

25

26   [10] Defendant states that the Court lacks authority to enter the order requested by plaintiff in light of
     42 U.S.C. section 405(g)'s authorization of judgments "affirming, modifying, or reversing the
27   decision of the Commissioner of Social Security, with or without remanding the cause for a
     rehearing."  Given the Court's determination that the requested order is not appropriate even
28   assuming the power to enter it, the Court need not, and does not, pass upon defendant's argument.

### D.    REFUSAL TO WAIVE OVERPAYMENT

Statute requires the SSA to recover overpayments of SSI benefits.  42 U.S.C. § 1383(b)(1)(A).  But the SSA may waive recovery if the payee was "without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity and good conscience, or (because of the small amount involved) impede efficient or effective administration of" SSI.  *Id.* § 1383(b)(1)(B).  The regulation interpreting the statute provides conjunctive requirements; that is, to receive a waiver of overpayment, a claimant must (1) be without fault *and* (2) demonstrate that one of the other circumstances enumerated in the statute is present.  *See* 20 C.F.R. §§ 416.552.

With respect to the fault inquiry, the determination "depends on all of the circumstances in the particular case" but "an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from . . . [f]ailure to furnish information which the individual knew *or should have known* was material." 20 C.F.R. § 416.552(a) (emphasis supplied); *see also McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000) (same).  The SSA must consider "the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition)."  *Id.*  "In determining whether an individual is without fault based on a consideration of these factors, the [SSA] will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have."  *Id.* "The overpaid individual bears the burden of proving that he was without fault." *McCarthy*, 221 F.3d at 1126 (citing *Anderson v. Sullivan,* 914 F.2d 1121, 1122 (9th Cir. 1990)).

Here, the ALJ reasoned that plaintiff was at fault because he had failed to report all his bank accounts—notably but not exclusively the Sterling CD—and failed to report his international travel.  (Record at 20.)  The ALJ determined that plaintiff knew or should have known of the reporting requirements and expressly found plaintiff's explanations of why he did not know about the

requirements "not credible." (*Id.*)  The ALJ based his adverse credibility finding on (1) plaintiff's status as an SSI beneficiary since 1993, during which time plaintiff "more than likely was subject to reviews and received notices and correspondence advising him of his rights and obligations"; (2) plaintiff's "high level of mental cohesiveness and capability" and the lack of evidence of any cognitive impairment, notwithstanding plaintiff's mood and anxiety disorders, as evidenced by plaintiff's ability to handle his and (purportedly) his family members' financial matters independently and his ability to travel abroad extensively "without knowledge of any of the various languages"; (3) the lack of corroborating documentation regarding plaintiff's claim to have conducted his travels abroad using only his SSI payments;[11] and (4) gaps and implausibilities in plaintiff's narrative concerning the $47,000, specifically, the apparent lack of interest earned between plaintiff's purported receipt of the money in April and its documented deposit in December, despite earning interest being one of the brother's primary stated reasons for placing the money with plaintiff. (*Id.*)  On the basis of these reasons, the ALJ found that plaintiff had not been "completely candid about the source of the funds at issue" and deemed plaintiff "not without fault in causing the overpayment."  (*Id.*)

Plaintiff contends that the ALJ erred in finding plaintiff at fault because: (1) the record contained no evidence that SSA notified plaintiff of his obligation to report all his funds and of any international travel; (2) the ALJ inadequately disregarded plaintiff's "limitations with regard to language and disability"; and (3) unjustifiably discredited plaintiff's testimony that he was unaware of the foreign travel restriction which, plaintiff contends, was bolstered by plaintiff's "candor in producing his bank records and explaining the issue."  (Pl. MSJ at 14-16.)  The Court finds plaintiff's second argument unpersuasive—the ALJ thoroughly considered plaintiff's mental and linguistic limitations (Record at 20)—but the first and third arguments have force.

---

[11] The ALJ noted, for instance, that while the bank records plaintiff provided show him receiving his SSI check, they do not include expenditures on, e.g., airplane tickets or accommodations. (Record at 20.)  In some months, plaintiff appeared to have spent only around $20.00.  The ALJ reasonably drew the inference that there had been two transfers of $47,000 in 2006 and that one of them had been deposited in one of the two bank accounts for which plaintiff supplied no detailed records.  The Court observes that this would be consistent with plaintiff's having earned over a thousand dollars in interest in two different accounts in 2006.

United States District Court
Northern District of California

United States District Court
Northern District of California

SSI recipients are required to report "any resources [they] receive or part with," 20 C.F.R. § 416.708(d), and anytime they "leave the United States for 30 or more consecutive days or for a full calendar month (without the intention of abandoning [their] residence[s] in the U.S.)," *id.* § 416.708(n), "within 10 days of the after the close of the month in which the event happens," *id.* § 416.714(a).  The ALJ assumed, without evidentiary support, that plaintiff must have received notices alerting him to these reporting obligations and, implicitly, must have understood those notices.  The record does not contain, however, any evidence that plaintiff in fact received such notices, nor, if he did, evidence of when the notices were received.[12]  It was incumbent upon the ALJ to develop such evidence.  Because he did not do so, remand is warranted.[13]

Because the record is inadequate as to fault, the Court need not address the question of whether recovery would be against equity or good conscience.  *See McCarthy*, 221 F.3d at 1127.  However, defendant's suggestion that, in case of remand, the ALJ should engage in additional factfinding regarding both the fault and the equity-and-good-conscience issues, is well-taken.  If a finding of fault is made, consideration of the equity of seeking repayment pursuant to 20 C.F.R. section 416.554 would be in order.  The record concerning that issue is lacking.[14]  In the interest of efficiency, the Court remands for further evidentiary development and factfinding on both issues.

---

[12] Timing may be an important issue: the parties stipulate that plaintiff lacked ability to communicate in English when he first began receiving SSI in 1993, but, by his 2008 hearing, plaintiff was able to communicate in English unaided and, indeed, claimed to "understand everything we say."  (Record at 461.)

[13] Defendant cites three out-of-circuit authorities for the proposition that the ALJ could "rely on the mandatory program requirements to assess whether a recipient should have known his reporting obligations."  (Def. XMSJ at 23-24 (citing *Sipp v. Astrue*, 641 F.3d 975, 981 (8th Cir. 2011); *Pemberton v. Comm'r of Soc. Sec.*, 86 F.3d 1156 (6th Cir. 1996) (unpublished); *Buchbinder v. Bowen*, 709 F. Supp. 389, 395 (S.D.N.Y. 1989)).  Those cases do not control, for two reasons.  First, this Court may affirm an ALJ's decision only on grounds upon which the ALJ himself relied, and the ALJ relied neither on those cases nor the idea of constructive notice advanced by defendant here.  Second, the cases cited by defendant are not binding authority and lack persuasive force either because they are unpublished, lacking in substantive analysis of this issue, or both.

[14] Section 416.554 provides, in pertinent part: "Adjustment or recovery is considered to be against equity and good conscience if an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the incorrect payment itself."  20 C.F.R. § 416.554.

**V.      CONCLUSION**

For the foregoing reasons, the motion for summary judgment of plaintiff Hong Jun Xun is **GRANTED IN PART AND DENIED IN PART**, as is the cross-motion for summary judgment of defendant the Acting Commissioner of Social Security.  The Court **AFFIRMS** the administrative law judge's decision of December 16, 2011, except with respect to his finding that plaintiff was not without fault in connection with the overpayments made to him from April 1, 2006 through June 1, 2008.  The Court **REMANDS** this case to the Social Security Administration for further evidentiary development and factfinding regarding (1) whether plaintiff received and understood notice of his obligations to report changes in his financial assets and to report international travel and (2) whether recovery of the overpayments made to plaintiff from April 1, 2006 through June 1, 2008 would be against equity and good conscience.

This Order terminates Civil Case No. 13-2041.

**IT IS SO ORDERED**.

Date: April  15, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**